TRANSATLANTIC SHIPPING CO., INC. v. UNITED STATES

No. 4547.—Invoices dated Glashutte, Germany, June 10, 1936, etc.
Certified June 12, 1936, etc.
Entered at New York, July 3, 1936, etc.
Entry No. 700495, etc.

Third Division, Appellate Term

(Decided March 23, 1939)

*James W. Bevans* for the appellant.
*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellee.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

KEEFE, Judge: In this case appellant makes application to review the decision and judgment rendered by a single judge involving twenty-five reappraisements of wood pulp which were consolidated for trial below. Upon the evidence submitted at the trial the court below was unable to find that the market value or price at the time of exportation of the merchandise to the United States was the price or value claimed by the plaintiff and therefore it was held that there was nothing produced sufficient to overcome the presumption of correctness attaching to the action of the appraiser and the appeals were dismissed.

The record discloses the following facts. The merchandise covered by thirteen entries was invoiced at a c. i. f. price of $5.20 per 100 kilos, the price being based upon the gross weight. The balance of the merchandise was invoiced at $5.20 per 100 kilos of net weight. The merchandise covered by reappraisement 119429–A, shipped June 12, 1936, was appraised at 14.25 reichsmarks per 100 kilos, net packed, while the merchandise covered by reappraisement 119430–A, shipped March 19, 1936, was appraised at 14 reichsmarks per 100 kilos, net packed. The merchandise covered by the balance of the reappraisements was entered under duress. Shipments made between November 7, 1935, and May 25, 1936, were entered at 14 reichsmarks per 100 kilos and shipments made between June 12, 1936, and March 24, 1937, were entered at 14.25 reichsmarks per 100 kilos. The appraised value of the merchandise is based upon the foreign-market value in Germany at the time of shipment while the invoice prices represent the export value.

At the trial the importer testified that the prices shown on the invoices represent the prices contracted and actually paid for the merchandise, and that the importer did not have an exclusive agreement with the shipper for the handling of the product in the United States. In further support of the importer's claim there was offered an affidavit of the manufacturer or shipper, admitted in evidence as Exhibit 1. This affidavit discloses that the exporting firm is engaged in the manufacture of beer mats in which wood pulpboard is used and produces wood pulpboard for its own use and for export, but does not manufacture wood pulpboard for sale in Germany. Affiant further states that said pulpboard is manufactured in two qualities, designated as "L" and "R", quality "L" being made by a special pouring process and quality "R" being pressed into layers and consequently is much heavier than quality "L"; that quality "R" may be separated into sheets while quality "L" is light and fuzzy and will not split or separate; and that quality "R" contains more wood and costs approximately 10 per centum more to produce. The affiant further states that during the years 1935, 1936, and 1937 only one sale of pulpboard was made in Germany; that this sale was to a competitor in the manufacture of beer mats who was unable to produce his own wood pulpboard due to the disabling of his plant by an electric storm; and that the quality sold to said competitior was not of the quality shipped to the plaintiff herein; and that such sale was not made in the usual wholesale quantities and in the ordinary course of trade.

The Government introduced a report of the Treasury representative investigating the market value of the merchandise. The report shows that the manufacturer has three customers in the United States, two in other foreign countries, and one in Germany; that the one sale in Germany was made in June 1936 and amounted to 17,500

kilos at a price of 14.25 reichsmarks per 100 kilos net; that a sale was made in Belgium at 12 reichsmarks per 100 kilos and an offer was made to a firm in Zurich, Switzerland, at the same price.

From the foregoing evidence the plaintiff contends that there was no foreign value or that, if there was any such value, it was lower than the export value.

The evidence offered by both sides at the trial is very meager, and was confined principally to the affidavit of the manufacturer and the report of the Treasury representative, both of which were unsatisfactory from the viewpoint of evidence. It will be noted, however, that Mr. Franke, the general manager who signed the affidavit, refused to admit or to deny that he had applied to the Government for a Z. A. V. export subsidy in connection with his United States deliveries up to August 1936, but stated that he had been enjoined by higher authority from divulging information on this subject. Therefore, as full disclosures have not been made concerning export sales, the only sale we have before us is the inland sale of 17,500 kilos which appears to be unfettered by Government interference. The report of the Treasury representative as well as the affidavit indicates that the inland sale is exceptional. Consequently we are of the opinion that the evidence is insufficient to prove whether or not the merchandise in question was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade at the time of the exportations herein, either for export to the United States or for home consumption; or that there was no foreign value for the merchandise; or that the foreign value was lower than the export value thereof. The appraiser has found a foreign value for the merchandise, the correctness of which has not been overcome. Therefore the judgment of the lower court, dismissing the appeals for insufficiency of evidence, is affirmed.