UNITED STATES v. SEARS, ROEBUCK & CO. ET AL.

No. 5078.—Invoices dated Berlin, Germany, December 18, 1936, etc.
Certified December 19, 1936, etc.
Entered at Memphis, Tenn., February 3, 1937; New Orleans, La., December 31, 1935; Philadelphia, Pa., May 5, 1937; Boston, Mass., September 13, 1937; etc.
Entry Nos. 58, 1804, 10866, 3834, etc.

Third Division, Appellate Term

(Decided January 2, 1941)

*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellant.
*James W. Bevans* for the appellees.

Before CLINE, EVANS, and KEEFE, Judges; KEEFE, J., not participating

CLINE, Judge: This is an application for review of the judgment of the trial judge, published in Reap. Dec. 4737, covering thirteen

reappraisements of steel wire rope imported from Germany. At the trial the cases were all consolidated for hearing. The dates of exportation of the merchandise covered by the various cases and the ports at which the goods were entered in the United States are as follows:

| | | | |
|---|---|---|---|
| 119113–A | November | 1935 | New Orleans |
| 125276–A | " | " | Boston |
| 125277–A | December | " | " |
| 125249–A | April | 1936 | " |
| 125250–A | May | " | " |
| 125700–A | September | " | " |
| 125038–A | November | " | " |
| 118692–A | December | " | Memphis |
| 121566–A | " | " | Philadelphia |
| 125037–A | February | 1937 | Boston |
| 120200–A | April | " | Philadelphia |
| 121565–A | May | " | " |
| 122260–A | August | " | Boston |

In reappraisements 118692–A and 119113–A the appraiser advanced the value of the goods, and, in all of the other cases the importer made an advance on entry to meet the advances made by the appraiser in either one or both of the test cases. The various shipments cover plow steel wire rope, $\frac{1}{4}''$, $\frac{5}{16}''$, $\frac{3}{8}''$, $\frac{1}{2}''$, $\frac{5}{8}''$, $\frac{3}{4}''$, $\frac{7}{8}''$ and $1''$ in diameter. In the test cases the rope was entered at a price in United States currency per hundred feet, less inland freight, but including the value of the reels and packing and a home consumption tax of 2 per centum. The merchandise was appraised at a price in reichsmarks per 100 kilos, less 10 per centum discount, plus reels and less inland freight. For instance, in reappraisement 119113–A, quarter-inch rope was entered at $1.36 per hundred feet, less inland freight, and it was appraised at 88.50 reichsmarks per hundred kilos, less 10 per centum discount, plus reels, and less inland freight. The price for rope of the same size is not uniform in all of the cases. For instance, in reappraisement 125700–A the quarter-inch rope was invoiced at $1.30 per hundred feet, packing included. It was entered under duress at 94.00 reichsmarks per hundred kilos, less 10 per centum discount, plus reels and packing, and was appraised at the entered value. Similar differences in values appear in the other sizes of rope covered by the various cases.

The testimony shows that steel wire rope of the kind covered by these various cases is manufactured in Germany according to United States specifications approved by the United States Bureau of Standards and that steel wire rope manufactured for use in Germany is made under German specifications. It was agreed between counsel that there is no foreign value for this product because steel wire rope manufactured for export to the United States is not used in Germany. The only question involved is whether the appraised values represent

the export values of the merchandise, as defined in section 402 (d) of the Tariff Act of 1930 or whether the entered or claimed values are the export values.

The trial judge who heard the testimony decided these cases in Reap. Dec. 4695 adversely to the importer's contention, but, after argument on rehearing, he reversed his former decision and held that the values claimed by the importer were the export values of the goods. We have carefully examined the evidence in the case, and, as the trial judge made an exhaustive review thereof in both of his opinions, we deem it unnecessary to again set forth the salient parts in the record.

The Assistant Attorney General assigns error to the admission of invoices of Montgomery Ward & Co., exhibit 1, covering steel wire rope. Those invoices were contained in the file in reappraisement 118269–A which had not been submitted before the court for decision. The plaintiff in the court below did not offer any evidence to show that the merchandise covered by the invoices in that exhibit was the same as that in the cases herein involved. He relied merely on the testimony of witness Rennhack who stated that all steel wire rope imported from Germany is manufactured according to United States standard specifications. The appellant calls attention to the fact that some of the invoices in that exhibit describe the merchandise as "Black crucible cast steel wire ropes" and that the importer's witness Rennhack testified on redirect examination that such a description would not apply to the rope in the instant cases. This testimony is as follows:

R. Q. Would you say that the expression, "Black crucible cast steel", wire rope, would apply to the rope that we have here today?——

*    *    *    *    *    *    *

R. Q. Would that term, description, apply to your rope before the Court today?—A. It would not.

The appellant points out also that the description of the black plow steel rope on the Montgomery Ward & Co. invoices in exhibit 1 is different from that on the invoices in the instant cases. The Montgomery Ward & Co. invoices show the "tensile strength" of the individual wires whereas the invoices in the instant cases specify the "breaking strength" of the rope.

We are of opinion that the trial court erred in admitting exhibit 1 in evidence, and, inasmuch as the trial court relied on that exhibit in the decision, the admission of the exhibit constitutes reversible error.

In the case of *United States* v. *Titan Shipping Co., Inc.*, 25 C. C. P. A. 403, T. D. 49485, the court held that where the appellate division was of opinion that the trial court erred in excluding an affidavit, the appellate division should reverse and remand the case to the trial court to make a new finding, after weighing the evidence.

In harmony with the decision cited, we reverse the decision below and remand the case to the trial court with directions to reconsider the case, giving no weight to the evidence contained in exhibit 1. Judgment will be entered accordingly.