UNITED STATES *v.* SEARS, ROEBUCK &᾽ CO. ET AL.

**No. 5728.**—Invoices dated Berlin, Germany, December 18, 1936, etc.
    Certified December 19, 1936, etc.
    Entered at Memphis, Tenn., February 3, 1937; New Orleans, La., December 31, 1935; Philadelphia, Pa., May 5, 1937; Boston, Mass., September 13, 1937, etc.
    Entry Nos. 58, 1804, 10866, 3834, etc.

Third Division, Appellate Term

(Decided on remand (30 C. C. P. A. 10, C. A. D. 207) October 8, 1942)

*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the appellant.

*James W. Bevans,* for the appellees.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is an application for review of the decision of the trial judge in finding the value, in reappraisement proceedings, of steel wire rope exported from Germany during a period from November 1935, to August 1937. Thirteen reappraisement cases were consolidated for trial, covering entries made at New Orleans, Memphis, Boston, and Philadelphia.

A review of the history of the case shows that the trial judge first appraised the merchandise on the basis of export value at the values found by the appraisers. *Sears, Roebuck & Co. et al.* v. *United States*, 4 Cust. Ct. 542, Reap. Dec. 4695. Subsequently the court granted a rehearing and, after argument but without taking any further testimony, reversed its former decision and held that the export values of the goods were the entered values less any additions made by the importers upon entry to meet advances by the appraisers. *Sears, Roebuck & Co. et al.* v. *United States*, 4 Cust. Ct. 652, Reap. Dec. 4737. An application for review was filed by the United States and the case was argued before this division. In considering the evidence introduced below, the court held that some invoices taken from another case pending before the court were improperly admitted in evidence as collective exhibit 1, on the ground that it was not shown that the merchandise covered by those invoices was the same or similar to that before the court for appraisement. The decision of the trial court was reversed and the case was remanded to the court below with instructions to reconsider the case, giving no weight to the evidence contained in collective exhibit 1. *United States* v. *Sears, Roebuck & Co. et al.*, 6 Cust. Ct. 702, Reap. Dec. 5078. A rehearing was granted, and, upon further consideration, the court again reached the same conclusion. *United States* v. *Sears, Roebuck & Co. et al.*, 6 Cust. Ct. 961, Reap. Dec. 5268. The importers filed an appeal for review of that decision by the United States Court of Customs and Patent Appeals and the appellate court held that collective exhibit 1 was competent evidence and should have been weighed by this division in reaching a decision as to the proper dutiable value of the merchandise. The judgment of this division was reversed and the case was remanded for further consideration. *Sears, Roebuck & Co. et al.* v. *United States*, 30 C. C. P. A. (Customs) 10, C. A. D. 207.

At the trial before the single judge, it was agreed between counsel that there was no foreign value for the merchandise. Counsel for the importer called Mr. Emil H. Rennhack, the buyer for the importing firm. He testified that he purchases wire rope and had been so engaged for 20 years; that in placing the orders he specifies the construction of the rope and the quality and also the breaking strength; that the specifications are made to accord with the specifications of the United States Bureau of Standards and the American Petroleum

Institute; that he had visited the factory of the shipper of the merchandise in Germany—the Dortmunder Drahtseilwerke—and witnessed the manufacture of wire rope; that the wire rope covered by these various importations at the different ports was all of the same quality and all consisted of plow steel wire rope and all wire rope made of plow steel under federal specifications would be the same.

At this point counsel for the importers offered in evidence the invoices and entries in reappraisement 118269–A covering wire rope imported by Montgomery Ward & Co. Over objection by counsel for the Government, these invoices were admitted in evidence and marked collective exhibit 1.

The witness testified further that there was no contract with the manufacturer by which sales of the kinds of rope herein involved were limited to Sears, Roebuck & Co.; that usually the importations consist of from three to five reels of rope of various sizes; that the qualities received had always been on the basis of a price per 100 feet and he had never bought any of such rope at a price per kilo and had never known of such rope being sold in the United States on a weight basis.

On cross-examination the witness testified that Sears, Roebuck & Co. have ten mail-order stores in the United States and about five hundred retail stores; that he buys wire rope for certain control stores and if some retail stores in that territory need it they requisition it from the control stores; that Sears, Roebuck & Co. have an office in Berlin and also one in Brussels and the representatives in those offices make direct contact with the manufacturers; that all specifications and qualities to be purchased are sent to the representative; that usually he, the witness, requisitions a year's supply at a time and has deliveries as they are needed; that the cases now before the court were deliveries. When asked the meaning of "contract B–9–8a" in the notation "S. N. NO. E–533, order number 4656, contract B–9–8a" on the invoice covered by reappraisement 118692–A, the witness said:

A. Merely a certification that we will favor them with our business for wire rope during that period. These contracts are very favorable for us. In other words, at any time we are able to make a better arrangement on better wire rope than we can obtain over there, we are not required to take them.

X Q. That contract, B–9–8a, is the number of your contract for the purchase of this rope?—A. That is right, and this order number is the specifications.

The witness was shown seven documents having the heading "Sears, Roebuck & Co., Import Contract of Purchase" and directed to Dortmunder Drahtseilwerke Wohlfahrt & Liesenhoff GmbH, Dortmund, Germany, and containing the words "Contract No." followed by certain numbers, the number being different on each exhibit. The exhibits are dated July 2, 1936, March 18, 1935, May 6, 1935, October 17, 1935, March 11, 1936, January 12, 1937, and March 18, 1935, respectively. The witness testified that they were

the contracts he mentioned. They were received in evidence and marked exhibits 2 to 6.

The witness testified further that all of the rope herein involved is standard plow steel rope; that there is also a grade of rope called "crucible cast steel" which is not as strong as plow steel but is a little more flexible and is cheaper; that breaking strength means the strength of the rope and not the strength of the wires themselves; that all of the rope herein involved was "6 x 19, plus one hemp core." A small piece of wire rope was admitted in evidence and marked illustrative exhibit A. The witness testified that it shows how the rope is constructed. He testified also that the term "Regular lay" means that all wires in the strands are of the same size and that all of the ropes in these shipments were "right hand lay"; that the rope in the instant shipments was ungalvanized and was called "Black" and he had never heard it called "Bright."

The attention of the witness was directed to the items 100,000 feet of ⅜-inch and 100,000 feet of ½-inch rope on the contract marked exhibit 3, dated March 18, 1935, and he testified that that was the usual quantity of purchase. He testified also that 130,000 feet of ⅜-inch and 110,000 feet of ½-inch rope on exhibit 4, dated November 17, 1935, were the usual quantities during that period and that 90,000 feet of ⅜-inch rope covered by exhibit 2, dated July 2, 1936, was the usual quantity during that period.

On redirect-examination the witness testified that the prices of wire rope increased in 1936 and in 1937 and those increases were shown in the invoices. His attention was directed to the following statement on exhibit 2:

We reserve us the right to change quantities within the different sizes should the necessity come up to do so.

He was asked what that meant and he stated "We could change it around to meet our requirements, and at the same time keep ourselves within the limit of the agreement." "It is not a rigid contract." He was asked further questions with respect to the contracts, as follows:

R. Q. What would you say with respect to this contract, Exhibit 2, as to exactly its binding effect upon your company?—A. Well, it won't really have a binding effect on our company. As I said before, we had the privilege of cancelling a contract provided we could make a better arrangement. The agreement was to protect us that we were buying at the right prices.

R. Q. That is, I understand you to say that you could cancel this contract, or any portion of it if you found that you could make a more advantageous purchase anywhere else?—A. Correct.

R. Q. But on each of the orders you sent abroad, you specified a definite number of reels to be shipped to a definite place in the United States?—A. Correct.

R. Q. Of the particular sizes you desired?—A. Yes.

R. Q. Would you say that was a binding commitment?—A. I would say that was a binding commitment.

On recross-examination, the witness was asked if he canceled any of the contracts in exhibits 2 to 6 and he testified that he did not have his record but he did not think any of those in 1935 or 1936 were canceled but there might have been some cancelations in 1937; that exhibits 2 and 6 were approved by his firm. He stated: "We cable our Berlin man and he gets the contracts there." When asked who fixes the price he said: "It is submitted to us by our Berlin man, and we approve it."

Counsel for the importers then offered an affidavit of Mr. Carl Neiberg, director of the exporting firm, and it was received in evidence and marked exhibit 8. It relates to certain shipments of wire rope to Boston which are involved in this case. The affiant states that his company has no agreement of any kind limiting sales to the firm of Sears, Roebuck & Co. in the United States and his company can sell at the same prices to any one who desires to buy.

At the conclusion of the evidence offered by the importers, counsel for the Government offered eight reports of Government agents and they were received in evidence and marked exhibits 9 to 15. We have examined all of these exhibits, but, inasmuch as they were so carefully digested in the decisions of the trial court, and, in the view we take of the case, we deem it unnecessary to review them at length in this decision.

The ropes on the invoices covered by the various appeals are invoiced at net unit prices in United States currency per 100 feet. In reappraisements 118692–A and 119113–A the merchandise was entered at the invoice prices and charges for inland freight on the invoices were deducted. In all of the other appeals the importers added on entry to meet advances made by the appraiser in the test cases. The merchandise was appraised by the appraiser at unit values in reichmarks per 100 kilos, less 10 per centum discount, plus reels, and less inland freight charges, except that in the Boston entries the inland freight charges were not deducted either on the entries or by the appraiser.

The appellant contends that the trial judge erred in denying Government counsel's motion to dismiss the appeals for failure of proof, which motion was made at the close of the importers' testimony. This contention is contained in assignment of error No. 1. The contention is coupled with assignments of errors 2 and 10 in which the appellant contends that the trial judge erred in finding and holding that the importing company sustained its burden of proving an export value for the merchandise different from the presumptively correct appraised value.

In considering the above contention of the appellant, the record in the case has been carefully examined for the purpose of ascertaining if the evidence submitted by the importers was sufficient to show

(quoting from section 402 (d) of the Tariff Act of 1930) "the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States."

Exhibit 1, which is the exhibit the appellate court held to be properly identified and received in evidence by the trial court, contains eight invoices covering wire rope purchased by Montgomery Ward & Co. from Felten & Guilleaume Carlswerk Eisen & Stahl A. G. and Felten & Guilleaume-Eschweiler Draht of Köln-Mülheim, Germany. The following tabulation shows the dates of certification on the invoices in exhibit 1 and the price in United States currency per 100 feet for each size of rope shown on the invoices, omitting the items of black crucible cast steel wire rope which witness Rennhack testified is different from the rope covered by the importations in the instant case:

| Date | $\frac{1}{4}''$ | $\frac{5}{16}''$ | $\frac{3}{8}''$ | $\frac{1}{2}''$ | $\frac{5}{8}''$ | $\frac{3}{4}''$ |
|---|---|---|---|---|---|---|
| 12/ 4/35 | | | | 3. 35 | 4. 95 | 6. 10 |
| " | 1. 30 | 1. 90 | 2. 15 | 3. 35 | | 6. 10 |
| " | 1. 40 | 1. 75 | 2. 30 | | 4. 95 | 6. 10 |
| " | 1. 30 | 1. 90 | 2. 15 | 3. 10 | 4. 95 | 6. 10 |
| 12/12/35 | | | | 2. 65 | 3. 91 | 4. 82 |
| " | 1. 10 | 1. 50 | | 2. 65 | | 4. 82 |
| " | 1. 11 | | 1. 82 | | 3. 91 | 4. 82 |
| 12/13/35 | | 1. 50 | | | 3. 91 | 4. 82 |

The invoices show that the prices include f. o. b. charges and ocean freight and a discount of 2 per centum and 2 per centum is deducted.

For the purpose of comparison of prices, we insert a tabulation showing the prices which the importers claim are the export values of the merchandise in the instant case, arranged in order according to dates of certification:

| Reap. No. | Date | $\frac{1}{4}''$ | $\frac{5}{16}''$ | $\frac{3}{8}''$ | $\frac{1}{2}''$ | $\frac{5}{8}''$ | $\frac{3}{4}''$ | $\frac{7}{8}''$ | $1''$ |
|---|---|---|---|---|---|---|---|---|---|
| 125276–A | 11/11/35 | | 1. 58 | 1. 97 | | | | | |
| 119113–A | 11/25/35 | 1. 36 | 1. 51 | 1. 89 | 2. 78 | 4. 12 | 5. 35 | 6. 45 | 8. 13 |
| 125277–A | 12/13/35 | | 1. 58 | | | | | | |
| 125249–A | 4/14/36 | | | | 2. 78 | | | | |
| 125250–A | 5/25/36 | 1. 30 | | | | | | | |
| 125700–A | 9/26/36 | 1. 30 | 1. 58 | 1. 97 | 2. 87 | 4. 26 | | | |
| 125038–A | 11/27/36 | 1. 30 | 1. 58 | | | 4. 26 | | | |
| 118692–A | 12/19/36 | | | 1. 97 | 2. 87 | 4. 26 | | | |
| 121566–A | 12/31/36 | 1. 30 | | | 2. 87 | 4. 26 | | | |
| 125037–A | 2/24/37 | 1. 30 | 1. 58 | 1. 97 | | | | | |
| 120200–A | 4/14/37 | 1. 30 | | 2. 08 | 3. 00 | | | | |
| 121565–A | 5/18/37 | | | | | | 5. 43 | | |
| 122260–A | 8/30/37 | 1. 30 | 1. 68 | 2. 08 | 3. 00 | 4. 45 | | | |

The above prices are net and it is claimed that a deduction should be made therefrom for inland freight.

The only shipment in the instant case that was exported within the dates of the invoices in exhibit 1 is that covered by reappraisement 125277–A, the invoice in which case was certified on December 13, 1935. It covers $\frac{5}{16}$"-rope claimed by the importer to be dutiable at $1.58 per 100 feet and rope of the same size was invoiced at $1.50 per 100 feet, less discounts of 2 per centum and 2 per centum, on the invoice of December 13, 1935, in exhibit 1.

The ropes in the instant case exported on November 25, 1935, which is 9 days prior to the earliest shipments in exhibit 1, are at different prices from those in the shipments of December 4, 1935, in exhibit 1, with the exception of the $\frac{1}{4}$"-rope which is invoiced at $1.30 and $1.40 per 100 feet, less discounts of 2 per centum and 2 per centum in exhibit 1, whereas in the shipment covered by reappraisement 119113–A the claimed value is $1.36, net. The other sizes, however, vary considerably in price. Disregarding the discounts for the moment, the $\frac{5}{16}$"-rope is $1.75 and $1.90 for the shipments of December 4, 1935, in exhibit 1 as compared with $1.51, claimed to be the value of the shipment of November 25, 1935, in the instant case; the $\frac{3}{8}$"-rope is $2.15 and $2.30 in exhibit 1, the claimed value in this case being $1.89; the $\frac{1}{2}$"-rope is $3.10 and $3.35 in exhibit 1, the claimed value in this case being $2.78; the $\frac{5}{8}$"-rope is $4.95 in exhibit 1, the claimed value in this case being $4.12; and the $\frac{3}{4}$"-rope is $6.10 in exhibit 1, the claimed value in that entry being $5.35. A computation shows that, with the exception of the $\frac{1}{4}$"-rope, a deduction of the discounts of 2 per centum and 2 per centum from the prices on the invoices of December 4, 1935, in exhibit 1 does not result in a value as low as claimed with respect to the rope exported on November 25, 1935.

It is evident from an examination of exhibit 1 that the export prices of steel wire rope fluctuated considerably between December 4, 1935, and December 13, 1935. Under such circumstances, the only evidence in that exhibit which can be considered as evidence of export value in this case is the invoice of December 13, 1935, because that is the only invoice in the exhibit which covered merchandise exported on the same day as any of the shipments in this case. The value on that invoice is lower than the claimed value of the merchandise covered by reappraisement 125277–A. A consideration of any of the other invoices in that exhibit would have to be based on an inference that the prices remained stable, which is disputed by an examination of the exhibit itself.

The only statement concerning value in exhibit 8, which is an affidavit of the director of the manufacturing company, is that they, the manufacturers, "can sell at the same prices to anyone who desires to buy." Such a statement has no evidentiary value for the purpose of showing the price at which merchandise is freely offered for sale. A similar conclusion was reached in *Transatlantic Shipping Co., Inc.*

(*Absorbo Beer Pad Co., Inc.*) v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118, where words of similar import in an affidavit were considered.

The only other evidence offered by the importers was the testimony of witness Emil H. Rennhack. We have carefully examined his testimony for the purpose of ascertaining if he testified concerning the market value of the merchandise or the receipt of offers from the manufacturers, and fail to find any such testimony. A reasonable inference from his testimony is that the Berlin representative of the importing firm made all contacts with the manufacturers and submitted prices to the importers. However, in cross-examining the witness, counsel for the Government offered seven copies of contracts entered into between the manufacturer and the importing firm and they were received in evidence and marked exhibits 2 to 6. These exhibits contain no signatures but the witness testified that they are contracts entered into with the manufacturer. They do not appear to be originals as the word "copy" is inserted at the head of most of them. We are of opinion that they are evidence of the terms of the contracts entered into between the importers and the exporting company. Some of these copies of the contracts bear dates showing the period during which they are operative. For instance, exhibit 2, dated July 2, 1936, and one of the documents in collective exhibit 4, dated March 11, 1936, contains the words "during 1936" under the word "Dates," while another document in collective exhibit 4, dated May 6, 1935, and exhibit 6, dated March 18, 1935, contains the words "to be completed until 12/31/35 in part shipments according to separate shipping instructions." Exhibit 5, which is a carbon copy bearing the date of January 12, 1937, contains the words "to be completed April 12, 1937." A comparison of the prices in the copies of the contracts with those on the invoices in the instant case shows that the goods were invoiced at the contract prices.

These copies of the contracts are practically the only evidence in the record available to sustain the importers' claim on all of the items covered by the shipments and the question arises as to what weight shall be given them in determining the issue before the court. The same question was presented in *United States* v. *Canada Packers, Ltd.*, Reap. Dec. 5624. In that case the merchandise was appraised by the local appraiser at the value shown in a contract entered into between the importer and the exporter. At the trial testimony was offered showing that the merchandise was sold and shipped from the country of exportation at or near the date of exportation at prices corresponding to the invoiced and entered prices, which were lower than the contract prices, and the court disregarded the contract prices and held that the invoiced and entered prices were the export values of the merchandise.

In *Transatlantic Shipping Co., Inc.* v. *United States*, 2 Cust. Ct. 893, Reap. Dec. 4547, it appears that the importer entered into a contract with the shipper for the purchase of pulpwood and the record showed that the shipper had made but one sale in Germany which was at prices different from the price which the importer contracted to pay. The court held that the record was insufficient to prove whether or not the merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade at the time of the exportations either for export to the United States or for home consumption and that the correctness of the appraisement had not been overcome and the reappraisement appeals were dismissed. The judgment of the court in that case was affirmed on appeal. *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States, supra*.

In *United States* v. *Camlin Corset Co., Inc., et al.*, 73 Treas. Dec. 1457, Reap. Dec. 4261, it appears that the importers entered into a contract with the manufacturers for the purchase of foundation garments, one of the terms of which permitted the manufacturer to sell freely throughout France the same quality of garments at the same price the importer was obliged to pay. Some sales in France were shown in the Government agent's report but only one of those sales was as low as the prices paid by the importers. The court found that the manufacturer had not complied with the terms of the contract and gave no weight thereto.

In the instant case, the prices in exhibits 2 to 6 vary considerably from those in the invoices in exhibit 1, and, although the shipments described in exhibit 1 are from a different manufacturer, under the rule followed by the courts in the cases above cited, we are of opinion that the evidence in exhibits 2 to 6 is entitled to little weight in determining the value of the merchandise. The price which governs in a reappraisement case is the price at which merchandise is freely offered for sale, not the price paid.

There is no testimony in the record tending to show where the principal market for wire rope is located in Germany. That is an essential element in this case because the importers deducted the charge for inland freight from the invoice prices of the merchandise both in the entries in which the appraiser made an advance and in the claimed values in the cases where the importers made an advance on entry to meet advances made by the appraiser in a test case. In some of the entries the appraiser permitted a deduction for inland freight but in all of the entries made at the port of Boston the inland freight was not deducted from the unit values found by the appraiser.

At the conclusion of importers' evidence, counsel for the Government moved to dismiss the appeals on the ground "that the importer has not offered competent proof of any export value other than or

different from the presumptively correct appraised value" and the trial judge denied the motion. It is our opinion that the motion should have been granted because the importer did not introduce any substantial evidence to prove that offers of such or similar merchandise were freely made to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of Germany at the time of exportation of the merchandise herein involved. In *United States* v. *T. D. Downing Co.* (*Geo. H. Sweetnam, Inc.*), 20 C. C. P. A. (Customs) 251, 256, T. D. 46057, the court used the following language in discussing the procedure to be followed in such cases:

Had the Government at the conclusion of importer's evidence chosen to move the dismissal of the appeal, because of the failure of importer to show any dutiable value, we are of the opinion that it would have been proper for the trial judge to have granted the motion.

After counsel for the Government moved to dismiss the appeals, evidence in the form of reports of Treasury agents was introduced by the Government, but there is nothing in those exhibits which tend to sustain the entered values, in the cases where the appraiser made an advance, or the claimed values, in the cases where the importers added on entry to meet advances made by the appraiser in the test cases.

As we find no substantial evidence to support the contention of the appellees, we are unable to find an export value for the merchandise different from that returned by the appraiser. The decision of the court below is reversed and the cases are remanded to the trial judge with instructions to dismiss the appeals.