MELBA B. RODRIGUEZ *v.* UNITED STATES

No. 7405.—Invoices dated Mexico, D. F., November 19, 1943, etc.
Certified November 23, 1943, etc.
Entered at Hidalgo, Tex., November 29, 1943, etc.
Entry No. 199–H, etc.

(Decided October 14, 1947)

*L. Hamilton Lowe* and *Orville I. Cox* (*William Whynman* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh* and *Daniel I Auster,* special attorneys), for the defendant.

CLINE, Judge: These appeals for reappraisement of metal bobby pins imported from Mexico were consolidated at the trial. The merchandise in reappraisement No. 155707–A (entry 199–H) was imported on November 29, 1943. It was entered at 16.75 Mexican pesos per grand gross, plus packing, containers and stamps, and was appraised at $3.6666 per great gross, net, packed, less freight charges

and consular fee. The merchandise in reappraisement No. 155708–A (entry 218–H) was imported on December 10, 1943. It was entered at 16.75 Mexican pesos per grand gross, including stamps and packing, less cartage charges and consular fee, and was appraised at $3.6666 per great gross, net, packed, less cartage charges and consular fee. The merchandise in reappraisement No. 155709–A (entry 242–H) was imported on December 30, 1943. It was entered at 16.75 Mexican pesos per great gross, plus stamps, including Mexican brokerage and export charges, and was appraised at $3.6666 per great gross, net, packed.

Plaintiff claims that the dutiable values are 13 Mexican pesos per great gross, plus stamps, in reappraisement Nos. 155707–A and 155709–A, and 13.50 Mexican pesos per great gross in reappraisement No. 155708–A, or, in the alternative, that the entered value should be sustained.

At the trial plaintiff called Leopoldo Cantú, the importer of the merchandise, who testified that the merchandise consisted of iron bobby pins; that the purchase was arranged through Gregorio Eguía, his agent; that Mr. Eguía had been his agent for about 6 years; that he paid him a commission, sometimes a flat 2 per centum, and his expenses when he was out of town; that he (Mr. Cantú) did not know anything about the value of the merchandise at the time of purchase, but relied upon Mr. Eguía; that he gave Mr. Eguía a check covering the purchase price and Mr. Eguía's expenses.

Plaintiff then introduced into evidence certain affidavits executed in Mexico. Plaintiff's exhibit 1 is an affidavit of Gregorio Eguía stating that he is a general merchant in Monterrey, Mexico, and also acts as agent for the purchase of merchandise that he does not maintain in stock; that he acted as agent for Leopold Cantú in connection with the purchase of bobby pins; that no bobby pins were offered for sale in Monterrey but that sales were made from Mexico City; that he was authorized by Mr. Cantú to go to Mexico City to purchase the bobby pins; that Mr. Cantú agreed to pay him a commission and his expenses; that he contacted Honorio Cejudo Cuéllar in Mexico City and Mr. Cuéllar helped to arrange for the purchase of the bobby pins covered by entries 199–H and 218–H; that the bobby pins were shipped directly from Mexico City to Mr. Cantú and billed to him; that the affiant was present when the arrangements were made for the purchase of the bobby pins; that he handed the money to Mr. Cuéllar who paid for them at the rate of 16.75 Mexican pesos per great gross; that he (affiant) received from Mr. Cantú "a commission of $500 pesos and 1,000 pesos Mexican for my expenses and disbursements."

Plaintiff's collective exhibit 2 is an affidavit of Ramiz Barquet, stating that he was the manager of Cía. Com. Dibaco, S. A.; that

they sold to Honorio Cejudo Cuéllar for account of Leopoldo Cantú, 2,800 packages, each containing one great gross of bobby pins, at 16.75 Mexican pesos per package; that 2,700 packages were purchased from Penhas y Barouh S. de R. L. at the rate of 13 Mexican pesos per package; that they had on hand the other 100 packages. This affidavit further states:

> The price of $16.75 pesos (Mex. Cy.) was the freely offered price to all purchasers whether for exportation to the United States or for Mexican consumption. The sale was made in the ordinary course of business without restrictions and in the usually wholsale [sic] quantities the unit being one (1) great gross containing 1728 pins. The price did not vary with the quantity purchased. * * *

Plaintiff's collective exhibit 3 is an affidavit of George A. Francis, stating that he is an importer, exporter, and commissionaire; that he purchased from Salvador Montal, 200 packages of bobby pins, containing one great gross each at 13.50 Mexican pesos per package; that he resold that merchandise to Honorio Cejudo Cuéllar for account of Leopoldo Cantú at 16.75 Mexican pesos per package. The affidavit also states:

> The price was the freely-offered price, for sale and without any restrictions, to all purchasers in the ordinary course of business, whether for exportation to the United States or for home consumption in México in the usual wholesale quantities, the unit quantity being one (1) package or great gross. The price did not vary with the quantity purchased. * * *
>
> The freely-offered price for México consumption and for exportation to the United States was the same and did not exceed $16.75 pesos (Mex. Cy.) per package, for that same quality during said period.

Plaintiff's exhibit 4 is an affidavit of Mario Barouh, a member of the firm of Penhas y Barouh S. de R. L., manufacturers of bobby pins, which states that his firm sold to Oscar García Garza of Reynosa, Tamps., Mexico, 1,000 great gross of bobby pins at 12.50 Mexican pesos per package, each containing one great gross; that they also sold 2,700 packages at 13 Mexican pesos per package to Cía. Com. Dibaco, S. A.; that the highest price offers and sales for exportation to the United States were 12.50 Mexican pesos per package between November 1943 and August 1944; that the price of 12.50 Mexican pesos for exportation to the United States and the price of 13 Mexican pesos for Mexican consumption were their freely offered prices for sale to all purchasers in the ordinary course of trade and in the usual wholesale quantities; that the unit wholesale quantity was one great gross.

Plaintiff's exhibit 5 is an affidavit of Bernardo Solares, stating that in 1943 he was president of Pasadores y Horquillas, S. A., which company then manufactured bobby pins; that "during the periods September 1 to 7 incluseive [sic] and December 1 to 9 inclusive, 1943, our highest freely ofered [sic] price for sale of bobby pins made of iron was $12.00 (Mex. Cy.)"; that the price did not vary with the

quantity sold and the unit quantity consisted of one package containing one great gross; that the price for exportation to the United States and the price for Mexican consumption were the same and that all sales were unrestricted.

Defendant offered in evidence a report of Customs Agent Benjamin S. White, Jr., dated April 26, 1944 (defendant's exhibit 6). Mr White stated that he interviewed Mr. Cantú on April 13, 1944; that Mr. Cantú stated that he had purchased the bobby pins covered by entries 199–H and 218–H from Honorio Cejudo Cuéllar for 16.75 Mexican pesos per great gross; that Gregorio Eguía had acted as his buying agent; that he had paid him a commission in excess of $500 and that there were other expenses involved. According to the report, Mr. Cantú exhibited a check stub which indicated that he had paid Mr. Eguía $11,000 for the bobby pins covered by the two entries, which amount was greater than the net entered value, but he produced no evidence to indicate whether the amount paid to Mr. Eguía was a buying commission, selling commission, or an outright profit made by Mr. Eguía by reason of resale of the merchandise to Mr. Cantú. Mr. Cantú stated in regard to entry 242–H, that the merchandise covered by it was owned by Oscar García Garza, Reynosa, Tamps., Mexico; that Mr. Cantú allowed him to import it in his name on his W. P. B. permit; that Mr. Cantú paid the duty on it and was reimbursed by Mr. Garza; that he had been informed by Mr. Garza that the bobby pins had cost him 12.50 Mexican pesos per great gross in Mexico.

It is the plaintiff's contention that the evidence shows the manufacturers were offering this merchandise at 12.50, 13, and 13.50 Mexican pesos per great gross, and that the manufacturers' freely offered price must be taken as the value of the merchandise and not the dealers' freely offered price.

Plaintiff has the burden not only of overcoming the presumption of correctness attaching to the appraiser's valuation, but of proving the correct dutiable value. *Harry Garbey* v. *United States*, 24 C. C. P. A. 48, T. D. 48332; *Sears, Roebuck & Co.* v. *United States*, 31 C. C. P. A. 36, C. A. D. 246. Therefore, plaintiff must establish the price at which this merchandise was freely offered for sale to all purchasers in the principal markets of the country, in the usual wholesale quantities and in the ordinary course of trade. The only actual sales shown by the evidence are those involved in the instant case, as follows:

From Penhas y Barouh to Cía. Com. Dibaco at 13.00 Mex. pesos (Exs. 2, 4).
From Montal to Francis at 13.50 Mex. pesos (Ex. 3).
From Penhas y Barouh to Garza at 12.50 Mex. pesos (Ex. 4).
From Cía. Com. Dibaco to Cuéllar at 16.75 Mex. pesos (Ex. 2).
From Francis to Cuéllar at 16.75 Mex. pesos (Ex. 3).
From Cuéllar to Cantú at 16.75 Mex. pesos (Ex. 1).

Thus, the merchandise involved in reappraisement No. 155707–A passed from Penhas y Barouh (manufacturers) to Cía. Com. Dibaco to Cuéllar to Cantú; that in reappraisement No. 155708–A from Montal to Francis to Cuéllar to Cantú; that in reappraisement No. 155709–A from Penhas y Barouh to Garza. Penhas y Barouh is the only seller shown to be a manufacturer of bobby pins. In November 1943, that firm sold similar merchandise to Cía. Com. Dibaco at 13 Mexican pesos per great gross and to Garza at 12.50 Mexican pesos. Another manufacturer, Pasadores y Horquillas, S. A., is said to have offered bobby pins at 12 Mexican pesos per great gross "during the periods September 1 to 7 incluesive [sic] and December 1 to 9 inclusive, 1943," but there is no evidence of any sales. Salvador Montal sold similar merchandise to Francis in November 1943, at 13.50 Mexican pesos per great gross, but it is not stated that he was a manufacturer. The affidavit of Mario Barouh of Penhas y Barouh states that the price of 12.50 Mexican pesos for exportation and 13 Mexican pesos for Mexican consumption were their highest offered prices for sale to all purchasers, and the affidavit of Bernardo Solares states that 12 Mexican pesos was the highest freely offered price of Pasadores y Horquillas, S. A. Thus, there is evidence of only two actual sales by a single manufacturer at different prices and offers by another manufacturer (Pasadores y Horquillas, S. A.) at a third price. If Montal be considered a manufacturer, there is a fourth price. Therefore, it cannot be held that the plaintiff has established *a price* at which the merchandise was freely offered by manufacturers to all purchasers in the ordinary course of trade. The statements of the manufacturers that certain prices were their freely offered prices to all purchasers are not proof of market value or price at the time of exportation of the merchandise. *Transatlantic Shipping Co., Inc.* v. *United States*, 28 C. C. P. A. 19, C. A. D. 118; *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 964, Reap. Dec. 5272.

Plaintiff claims, in the alternative, that the entered value should be sustained. The entered value, 16.75 Mexican pesos, is the price at which the merchandise was sold by Francis and Cía. Com. Dibaco to Cuéllar and from Cuéllar to Cantú. These are the only actual sales shown and all of them were to or for the account of the importer herein. I do not think such sales are sufficient to establish a foreign or export value and to overcome the presumption of correctness attaching to the appraiser's valuation. The statements in the affidavits of Ramiz Barquet and George A. Francis that 16.75 Mexican pesos was the freely offered price to all purchasers for exportation or for Mexican consumption have no evidentiary value for the purpose of showing the price at which the merchandise was freely offered for sale. *United States* v. *Sears, Roebuck & Co.*, 9 Cust. Ct. 624, Reap. Dec. 5728, affirmed *Sears, Roebuck & Co.* v. *United States*, 31 C. C. P. A. 36,

C. A. D. 246. It is to be noted that Barquet and Francis give 16.75 Mexican pesos as the freely offered price for bobby pins for exportation and for home consumption; Barouh gives 12.50 Mexican pesos for exportation and 13 Mexican pesos for home consumption; and Solares gives 12 Mexican pesos for exportation and home consumption. It is therefore impossible to find a single freely offered price to all purchasers in the ordinary course of trade.

On the record presented, I hold that the presumption of correctness attaching to the appraiser's finding of value has not been overcome. I find therefore that the appraised value is the dutiable value of the merchandise herein. Judgment will be rendered accordingly.